IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANCY MIRTO | : | CIVIL ACTION NO: 3:14-cv-1640 |
|     Plaintiff, | : | |
| | : | |
| | : | |
| AETNA LIFE INSURANCE COMPANY and | : | |
| YALE NEW HAVEN HEALTH SYSTEM LONG | : | |
| TERM DISABILITY PLAN | : | |
|     Defendants. | : | NOVEMBER 3, 2014 |

## **COMPLAINT**

## **JURISDICTION**

1. This action is brought pursuant to the Employee Retirement and Income Security Act, 29 U.S.C. 1001 §et seq. (hereinafter, "ERISA").

2. Jurisdiction of this action is conferred by the existence of a controversy arising under ERISA, 29 U.S.C. Sec. 1132, 28 U.S.C. § 1343(4) and 29 U.S.C. §§ 216(b), 626(c) (1) and the existence of a controversy arising under the laws of the United States, 28 U.S.C. 1331.

3. Venue is proper in this district pursuant to 29 U.S.C. Sec. 1132 and 28 U.S.C. 1391 (b) and (c).

## **PARTIES**

4. Plaintiff Nancy Mirto (hereinafter, "Plaintiff") is a resident of the Town of Hamden, State of Connecticut.

5. Defendant Yale New Haven Health Systems Long Term Disability (the "Plan") is a welfare benefit plan under ERISA.

6. Defendant Aetna Life Insurance Company (the "Aetna") acts as the Plan Fiduciary under federal law for the review of claims for benefits provided by the plan and for deciding appeals of denied claims, and is a corporation with its principal place of business in Hartford Connecticut, and transacts business in the State of Connecticut.

7. The plan document of the Plan does not specify the Plan Administrator.

8. Aetna insures and underwrites the Plan under Group Policy No: GP-701536.

9. Plaintiff is a participant in the Plan, within the meaning of ERISA §3(7), 29 U.S.C. § 1002(7), and has standing to bring this action under ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## CLAIMS

10. Plaintiff was hired by Yale New Haven Hospital, Inc. ("Yale New Haven") on July 23, 1980 as a secretary. In 1990, she became employed as a registered nurse.

11. While employed by Yale New Haven, plaintiff became a participant in the Plan.

12. Plaintiff suffered severe knee pain, requiring arthroscopic surgery on December 15, 2009.

13. The surgery did not resolve her knee pain.

14. In February 2010, plaintiff became unable to continue to perform her job due to severe knee pain and back pain. Her last day of work was February 27, 2010.

15. At the time of her disability, plaintiff was employed as a Clinical Nurse II.

16. On March 5, 2010, Aetna approved plaintiff for short-term disability benefits on grounds that she was disabled from performing her position as a Clinical Nurse II, effective

February 27, 2010.

17. After receiving short-term disability benefits for six months, plaintiff was approved for long-term disability benefits under the Plan.

18. Plaintiff's knees continued to degenerate, and on April 5, 2011, she had bi-lateral knee replacement surgery.

19. While plaintiff's knee healed well and did not show a physical impairment, she continued, and continues, to suffer severe knee pain.  She has difficulty ascending and descending stairs, and has pain particularly with protracted standing, and standing from a seated posture.  She suffers pain with standing and walking, with pain that is "knife-like and throbbing."

20. Plaintiff also suffers from an impairment of her spine.  Magnetic Resonance Imaging and x-rays showed diffuse spondyloarthritic changes characterized by multi-level disc space narrowing, most pronounced at C5-6 and C6-7 levels, endplate sclerosis and marginal and unconvertebral osteophytosis suggestive of foraminal stenosis, and facet sclerosis noted at multiple cervical levels.

21. In June 2011, she was granted Social Security Disability benefits.

22. While disabled, she also developed hip pain, with x-rays showing moderate to severe osteoarthritic changes in the right hip, with significant narrowing and near obliteration of the superolateral joint space.

23. In late 2012, Aetna began a reassessment of Plaintiff's disability to determine if she satisfied the "any reasonable occupation" standard provided in the Plan.

24. In connection with that assessment, Aetna had Plaintiff's medical records reviewed by a registered nurse, Judy Tierney, who concluded that the medical records did not support Plaintiff's continued disability.

25. Aetna claims that it then forwarded that assessment to David Gibson, M.D. Dr. Gibson who treated Plaintiff for her knee condition, and a physician in his office, Dr. Sakalkale, who treated her for her back condition.

26. After several failed attempts to reach Dr. Gibson, Aetna's claim notes state that on January 4, 2013, Dr. Gibson's assistant called to say that Dr. Gibson agreed that Plaintiff had a full-time sedentary work capacity.

27. This was not Dr. Gibson's opinion at that time, and Dr. Gibson has no record of such a telephone call.

28. Aetna performed a Transferable Skills/Labor Market Analysis (the "Analysis") on January 16, 2013, finding several jobs it claimed satisfied the Plan's definition of disability. The Analysis is invalid, and not a basis for discontinuing benefits, because the report assumed she could perform at full-time sedentary physical capacity based on the erroneous conclusion drawn from the telephone conversation with Dr. Gibson's assistant on January 4, 2013.

29. On January 18, 2013, Aetna informed Plaintiff that it was discontinuing her long-term disability benefits.

30. The basis for the denial was the January 4, 2013 message from Dr. Gibson's assistant, and that the medical records did not support her continuing disability from a full-time sedentary position.

31. Aetna's denial, and the internal medical review Aetna performed, only addressed the Plaintiff's knee condition, failed to substantively address the back pain, and did not mention her hip pain.

32. In its denial, Aetna failed to address the finding of the Social Security Administration that Plaintiff was totally disabled from any employment.

33. After Aetna granted several extensions for Plaintiff to file her appeal, she filed the appeal on November 7, 2013.

34. The appeal discussed that Plaintiff's medical records were replete with objective medical evidence of her spine and hip conditions, and that Plaintiff had consistently complained of severe, disabling pain.

35. The appeal also cited the medical literature indicating that a percentage of knee replacement patients suffer continuing knee pain without any physical problems with the replaced knee, and that the only evidence of such pain is the patient's report of the pain. Requiring objective evidence of a condition for which the only potential evidence is the patient's report was erroneous.

36. The appeal pointed out that Aetna had received erroneous information when it concluded from the January 4, 2013 message that Dr. Gibson had cleared Plaintiff for full-time sedentary work. Dr. Gibson's medical records of December 12, 2012, March 13, 2013, June 21, 2013 and September 16, 2013 all stated that his opinion was that Plaintiff was full disabled from any sedentary position. Aetna ignored the unequivocal statements of Dr Gibson in the medical records, relying instead on a second-hand report in a telephone call.

37. Due to the difficulty Aetna had had in reaching Dr. Gibson when conducting its file review, Plaintiff offered in the appeal letter to have plaintiff's counsel's office arrange a telephone conference between Aetna's file reviewing physician and Dr. Gibson's office. Trying to reach a physician by calling his office and expecting a return call is not an effective way to consult with a physician. The only way to assure communication is to establish a time for a telephone conference and arrange for payment ahead of time.

38. In late 2013, in connection with the appeal, Dr. James Wallquist conducted an

5

independent file review concluding that the medical evidence did not support Plaintiff's disability. The exam ignored the objective medical evidence of Plaintiff's spinal and hip conditions, and failed to address the issue that a significant number of knee replacement patients suffer continued pain after the replacement even if the knee appears to be healed.

39. On December 5, 2013, Aetna sent Dr. Wallquist's report to Dr. Gibson for his review.

40. It is noted within Dr. Wallquist's report that Dr. Gibson's office staff relayed to Aetna that Gibson's opinion was that no changes should be made to Plaintiff's work status, and that he had scheduled a follow up appointment with Plaintiff for December 20, 2013 at which time he would reassess her disability.

41. Despite including this information in the report, Dr. Wallquist and Aetna ignored this statement from Dr. Gibson's office, and in their denial concluded that Dr. Gibson agreed with Dr. Wallquist.

42. Dr. Wallquist ignored the many statements by Dr. Gibson that Plaintiff was disabled, and in his report stated no principled basis to ignore his conclusions.

43. Dr. Wallquist made inadequate efforts to actually speak with Dr. Gibson, leaving telephone calls on the two days prior to Thanksgiving, and then dictating his report on Thanksgiving Day, allowing Dr. Gibson no opportunity to respond. Aetna did not use plaintiff's counsel's office to arrange a telephone conference as plaintiff's counsel had offered. This demonstrates that Aetna actually had no interest in having its physician speak to Dr. Gibson so he would have a basis for rejecting Dr. Gibson's opinion.

44. On December 12, 2013, Aetna denied the appeal on the basis stated by Dr. Wallquist. For the reasons stated above, the denial was erroneous.

45. On February 18, 2014, Plaintiff requested that Aetna reopen the appeal to allow Dr.

Wallquist the opportunity to discuss Plaintiff's disability with Dr. Gibson.  Since the original denial was based on misapplication of information Aetna obtained from Dr. Gibson's office in the January 4, 2013 conversation, Aetna should have made substantial efforts to make sure Dr. Wallquist had the opportunity to consult with Dr. Gibson.  Instead, Dr. Wallquist called twice, on the two days immediately preceding Thanksgiving, and then dictated his report the day after the second attempt.  He ignored the message from Dr. Gibson's office that his opinion was that Plaintiff was fully disabled from any sedentary position, even though he'd noted such opinion of Dr. Gibson within his report.

46. On June 6, 2014[1], Aetna informed Plaintiff that it was not reopening its consideration of the appeal.  It claimed that Dr. Wallquist attempted to reach Dr. Gibson and the attempts were unsuccessful.  Aetna again failed to arrange for a telephone conference with Dr. Gibson, either on its own or with the assistance of plaintiff's counsel, demonstrating that it had no interest in actually speaking with Dr. Gibson.

47. Plaintiff is entitled to receive benefits from February 27, 2013 to age sixty-five, or until she was no longer disabled.

48. Aetna both funds and administers the Plan.

49. Aetna's decision to discontinue Plaintiff's long-term disability benefits was erroneous.

50. Plaintiff is, and has since February 27, 2013, been disabled as defined in the Plan.

51. Aetna never conducted any independent vocational examinations of plaintiff's ability to perform her occupation.

52. Plaintiff exhausted all administrative remedies provided in the Plan for its denial of

---

[1] It should be noted that Aetna erroneously dated their correspondence June 6, 2013, however within said letter referenced 2014 documents and information considered.

7

benefits.

53. The Plan does not reserve discretion in interpretation of the plan to the plan fiduciary, so Plaintiff's claim is subject to de novo review.

54. To the extent the Court finds that the Plan reserved discretion to interpret the plan, the Court should apply a modified arbitrary and capricious standard since Aetna is liable for payment of any benefits, was the entity responsible for deciding benefit claims and appeals, and handled the claim in a manner that demonstrates that the conflict of interest affected Aetna's review of the claim.

## COUNT I
### (Enforcement of Plan Terms)

55. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

56. The Plan is a contract.

57. Plaintiff performed all of her obligations under the Plan.

58. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provide that a participant may bring a civil action to recover benefits due under the Plan.

59. Aetna's denial of benefits was erroneous.

60. Aetna has breached the terms of the Plan by failing to pay plaintiff the benefits to which she is entitled.

61. Plaintiff was damaged by the Plan's denial of benefits.

62. Plaintiff is entitled to be paid benefits under the Plan from February 27, 2013, and continuing into the present under such time as she reaches age 65 or is no longer disabled.

63. Plaintiff has been damaged by Aetna's breach of contract.

64. Pursuant to ERISA §502(a) (1) (B), 29 U.S.C. §1132(a) (1) (B), Plaintiff

hereby makes a claim for benefits under the Plan.

## COUNT II
### (Claim for Attorneys Fees)

65. Plaintiff realleges each of the paragraphs above as if fully set forth herein.

66. Plaintiff is entitled to recover "a reasonable attorney's fee and costs of the action" incurred in connection with this action pursuant to ERISA §502(g)(1), 29 U.S.C. § 1132(g).

67. Aetna has the ability to satisfy the award.

68. Plaintiff has served the interests of all participants in the Plan by bringing this action to deter Aetna from denying benefits wrongfully and in bad faith.

69. The award of attorneys' fees to plaintiff will deter Aetna and others from similarly denying claims wrongfully and in bad faith.

**Prayer for Relief**

Plaintiff hereby seeks the following relief from this court:

a. An order that plaintiff is entitled to receive benefits pursuant to the Plan.

b. An order compelling defendant to pay all benefits accrued under the Plan to the date of any judgment.

c. An order that Aetna make restitution to plaintiff in the amount of any losses sustained by plaintiff in consequence of the conduct alleged herein.

d. An award of prejudgment interest.

e. Reasonable attorneys' fees and costs incurred in bringing this action.

f. Such other and further relief as the Court deems proper.

    PLAINTIFF
    NANCY MIRTO

      /s/ David S. Rintoul
    David S. Rintoul
    Brown, Paindiris & Scott, LLP
    2252 Main Street
    Glastonbury, CT 06033
    Tel: 860-659-0700
    Fax: 860-659-8292
    drintoul@bpslawyers.com
    Federal Bar No. ct08456