UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NANCY MIRTO, :
    Plaintiff, :
     :   No. 3:14cv1640 (WWE)
v. :
     :
AETNA LIFE INSURANCE COMPANY, :
YALE NEW HAVEN HEALTH SYSTEM :
LONG TERM DISABILITY PLAN, :
    Defendants. :

### RULING ON MOTION FOR SUMMARY JUDGMENT

In her complaint, plaintiff Nancy Mirto alleges that defendants Aetna Life Insurance Company and Yale New Haven Health System Long Term Disability Plan erroneously terminated her Long Term Disability benefits under an employee benefits plan governed by the Employee Retirement Income Security Act ("ERISA").

The parties have filed cross motions for summary judgment. Defendants have also filed a motion to dismiss a claim in the newly amended complaint. For the following reasons, the Court will deny defendants' motion for summary judgment and grant plaintiff's motion for summary judgment to the extent that the matter will be remanded to Aetna. The motion to dismiss will be granted.

### Background

The parties have submitted statements of facts with supporting citations to the administrative record.

Defendant Yale New Haven Health System Long Term Disability Plan is a long-term disability plan (the "Plan") underwritten by a group insurance policy between Aetna and Yale New Haven Health Systems (the "Group Insurance Policy"). The Summary

Plan Description identifies Yale-New Haven Hospital as the plan administrator and Aetna as the claims fiduciary to the Plan.  At page two, the Plan document states: "This Plan is underwritten by the Aetna Life Insurance Company, of Hartford, Connecticut (called Aetna).  The benefits and main points of the group contract for persons covered under this Plan are set forth in this Booklet."  At page thirteen, the Plan document states: "This document describes the main features of this Plan.  Additional provisions are described elsewhere in the group contract.  If you have any questions about the terms of this Plan or about the proper payment of benefits, you may obtain more information from your Employer or, if you prefer, from the Home Office of Aetna."

The Group Insurance Policy designates Aetna as the ERISA claim fiduciary with "complete authority to review all denied claims for benefits," and it provides that "Aetna shall be deemed to have properly exercised such authority unless Aetna abused its discretion by acting arbitrarily and capriciously."

Relevant to long term disability ("LTD") benefits, the Plan provided that a participant who was "unable to perform the material duties of [her] own occupation" would receive monthly benefits for 36 months after the date of becoming disabled. After the first 36 months, the participant would receive a monthly benefit payable during a period of disability if she was "not able to work at any reasonable occupation solely because of: disease; or injury."  The Plan defines "own occupation" as "the occupation that you are routinely performing when your period of disability begins."  It defines "reasonable occupation" as "any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be

2

expected to result in; an income of more than 80% of your adjusted predisability earnings."

Plaintiff commenced employment at Yale-New Haven Hospital in July 1980. Plaintiff holds an Associate's Degree in nursing.  At the time relevant to this action, she held the position of Clinical Nurse II SVC, which required medium physical demands of lifting, pushing, pulling and significant standing.  Plaintiff was also required to assess patients; draw blood; administer IVs and medication; and collaborate with the medical team to facilitate patient care.

On August 22, 2009, plaintiff fractured her left rib and twisted her right knee. Plaintiff did not return to work until September 9, 2009.  However, she ceased working on September 14, 2009.  Plaintiff received short term disability benefits through January 25, 2010.

Plaintiff was first eligible to receive LTD benefits on February 27, 2010.  In a letter dated March 5, 2010, Aetna informed plaintiff that it had determined her to be "totally disabled from her own occupation."  She was eligible to receive monthly LTD benefits "effective February 27, 2010, and continuing for up to 36 months as long as you remain disabled from your own occupation."  Plaintiff was also informed that after February 27, 2013, she would need to provide "objective medical evidence" that she met the "any reasonable occupation" definition of disability in order to receive LTD benefits.

On April 5, 2011, plaintiff underwent bilateral simultaneous total knee replacements.

In June 2011, plaintiff was awarded social security disability insurance effective

March 1, 2010, in the amount of $1,937 per month.  Aetna did not receive the Social Security Administration's determination or the relevant administrative record.

In July 2011, three months after plaintiff had undergone knee surgery, plaintiff's physician, Dr. David Gibson, an orthopedic surgeon, noted that plaintiff was "making slow progress, although, indeed, making progress."  He stated that she had "mild restriction in flexion" in both knees; that her range of pain was "2-4 out of 10;" and her left hip was "tender" with a normal range of motion.  He concluded that her knees were "doing well" and that her "aberrant gait" had resulted in "trochanteric bursitis."  In his attending physician statement dated July 6, 2011, he indicated that her diagnosis was "degenerative joint disease, bilateral knees" and that her treatment plan was "surgery, physical therapy, [and] home exercise program."

Office visit notes dated September 14, 2011, signed by Dr. Gibson, stated that plaintiff had "ongoing anterior knee pain that is exacerbated with certain activities," although range of motion for both knees was "near normal."  An office visit note dated December 2, 2011, provided that plaintiff "walks without external support and appears in no acute distress" and that her knees had "near normal" range of motion.

An office visit note dated March 7, 2012 indicated that plaintiff's knees "are making slow progress" with some anterior knee discomfort" and "near normal" range of motion.  Plaintiff appeared to be "in no acute distress."  The note also stated that plaintiff was experiencing "ongoing lumbar discomfort" and to a "lesser extent" left shoulder discomfort.  Dr. Gibson reported that plaintiff was "not quite ready for work" because she was unable to stand for a "protracted period of time" or "sit for time" due to discomfort.  In a Capabilities and Limitations Worksheet dated March 7, 2012, Dr.

Gibson indicated that plaintiff was "totally disabled."

Dr. Gibson's office visit note dated June 1, 2012, provided that plaintiff was "doing reasonably well" even though she had knee discomfort, and difficulty negotiating stairs and getting up from a seated position. He found that she was "not quite ready" for work as a full duty nurse.

In a letter dated July 20, 2012, plaintiff was informed by Aetna that the "own occupation" definition of disability would end on February 26, 2013, and that she would be eligible for LTD benefits only if she was determined to be disabled from "performing any gainful occupation." She was informed that she should notify Aetna if she had "any medical and/or vocational information that [she] would like [Aetna] to consider in making [its] decision."

In an office visit note dated September 27, 2012, plaintiff was described as having "aching in the anterior aspect of both knees" with "significant tenderness with palpation in the area of the pes bursa." Office visit notes dated October 23, 2012, document that plaintiff had been falling down on her buttocks during a period of two weeks; and she had experienced lower back pain with slight pain to cervical spine that was "mildly limited in extension" in right and left turns. Plaintiff was given a donut cushion to use for two or three weeks and sent to out patient therapy. The x-rays of the cervical spine showed "multi-level disc space narrowing."

In late October 2012, Judy Tierney, R.N., of Aetna, was asked to conduct an assessment of the documents that Aetna had received regarding plaintiff's disability claim. Nurse Tierney found that plaintiff was "near normal" after her knee replacements but had some ongoing complaints of tenderness. She assessed that plaintiff "may be

5

limited to full time sedentary work activity or light activity with the opportunity to sit and stand at will." She recommended that the disability benefits manager obtain an orthopedic specialty Attending Physician Statement with a Capabilities and Limitations Worksheet from Dr. Gibson.

In a letter dated November 15, 2012, plaintiff was informed that Aetna needed Dr. Gibson to complete and return an Attending Physician Statement with a Capabilities and Limitations Worksheet so that Aetna could determine her eligibility for continued disability benefits.

In a December 7, 2012 office note, Dr. Gibson found that plaintiff still had ongoing knee pain, degenerative changes of her lumbar spine, and trochanteric bursitis, which limited her ability to walk, stand or sit for a protracted period of time. He noted that she was still disabled from work.

Nurse Tierney completed another clinical review after plaintiff's file had been updated. She noted that Dr. Gibson had not completed the Attending Physician Statement with a Capabilities and Limitations Worksheet; she concluded that the "medical does not support impairment from lifting up to 10 [pounds], mostly sitting, occasionally walking." She recommended that the disability benefits manager obtain the Attending Physician Statement with a Capabilities and Limitations Worksheet from plaintiff's doctors.

By letter dated December 24, 2012, Aetna informed plaintiff that it had not received Dr. Gibson's Attending Physician Statement with a Capabilities and Limitations Worksheet and that plaintiff had the responsibility to provide proof of disability. The letter warned plaintiff that if the Attending Physician Statement and Capabilities and

6

Limitations Worksheet forms completed by Dr. Gibson "are not received by 1/25/2013, we will assume that you do not wish to pursue your claim and your LTD benefits will be terminated accordingly."

On January 2, 2013, Nurse Tierney twice telephoned Dr. Gibson's office to discuss plaintiff's functional capacity.  Nurse Tierney left a message on the voice mailbox for an individual named Donna, requesting a telephone call back regarding plaintiff's full-time sedentary work capacity.  On January 3, 2013, Nurse Tierney received a phone call from Dr. Gibson's physician assistant Kimberly Keane and they discussed whether plaintiff would be able to work a full-time sedentary position with accommodation to change her position as necessary.  According to Tierney's notes, Keane had not seen plaintiff since September 2012, but she had responded that such a assessment sounded reasonable.  Nurse Tierney noted that Keane had indicated that she would discuss the issue with Dr. Gibson and that either Keane or Dr. Gibson would call Tierney back.

The following day, on January 4, 2013, Nurse Tierney reviewed plaintiff's file. She concluded that plaintiff had "ongoing complaints of pain" but the "available medical does not support physician's indication that claimant is unable to perform sedentary...." She went on to find that "it would be reasonable for her to have position that would allow changes from sit to stand on an as needed basis."  Approximately one hour after she had completed this clinical review, Tierney received a telephone call from "Dr. Gibson's assistant" who indicated that Dr. Gibson had agreed that plaintiff was "capable of full time sedentary work activity."  Nurse Tierney updated her review to add that plaintiff had "full time sedentary work capacity."

7

By facsimile dated January 14, 2013, Aetna informed Dr. Gibson that medical documentation was required to support plaintiff's claim for benefits; it requested that Dr. Gibson complete the attached Attending Physician Statement and provide diagnostic tests and notes with physical examination findings. It also instructed him to indicate whether plaintiff was able to return to work with restrictions. On January 15, 2013, Dr. Gibson's office returned the Attending Physician Statement and Capabilities and Limitations Worksheet, indicating that "the forms were too small." Forms were refaxed to Dr. Gibson that day.

Deborah Lince, a Vocational Rehabilitation Consultant, analyzed plaintiff's transferable skills and the relevant labor market in light of the "any reasonable occupation" test of disability. On January 16, 2013, Lince identified three potential occupations—Registrar at the Nurse's Registry; Supervisor for Blood Donor Recruiters; and Nurse, Consultant—that all had a sedentary physical demand capacity, a reasonable wage and were consistent with plaintiff's skills and capacity.

In a letter dated January 18, 2013, Aetna informed plaintiff that her LTD benefits would terminate effective February 26, 2013, because Aetna had found that plaintiff was "not totally disabled from performing any reasonable occupation." The letter explained that the medical records from plaintiff's physicians did not "support impairment from a full time sedentary work physical demand level;" and that a vocational assessment indicated that she was capable of "engaging in competitive employment" as a Registrar, Supervisor for Blood Donor Recruiters, or Nurse-Consultant. The letter noted that plaintiff had been approved to receive Social Security Disability benefits, and it explained that Aetna's determination differed from that

mandated by the Social Security regulations.   Finally, plaintiff was informed that she had the right to appeal the decision to terminate her LTD benefits.

On March 12, 2013, Aetna received a letter from Frana Dupree, LCSW, stating that it was an appeal for an extension of benefits for plaintiff, who was suffering from profound depression.  The letter stated that plaintiff needed "several more months of financial support in order to be able to once again be a contributing member of society." By letter dated March 14, 2013, Aetna informed plaintiff that Dupree's letter could not be accepted as a letter of appeal because it was not submitted by plaintiff or her representative.

In July 2013, Aetna receive a letter from plaintiff, stating that she was "appealing the benefit denial."  She requested 90 days to submit information in support of her appeal.  On her Disability Appeal Request Form, plaintiff asserted that she had not "been cleared by ortho;" continued to have lower back pain with flareups and difficulty with lifting, standing, and depression; and "s/p cholecystetctomy & impending hernia surgery."  On the Appeal Request Form, she represented that she could not sit for long periods of time and was unable to stand for more than 15 minutes without having severe back pain.

In a telephone call with a Senior Appeal Specialist at Aetna, plaintiff confirmed that her history of hernia repair, right knee problems and hip problem conditions were preventing her from returning to work in her previous position.  Aetna afforded plaintiff until August 19, 2013, to allow her additional time to submit information from Dr. Gibson.

In a letter dated August 16, 2013, Attorney David Rintoul informed Aetna that his

firm represented plaintiff regarding the denial of her LTD benefits claim. Aetna afforded Rintoul until November 15, 2013 to submit additional documents in support of plaintiff's appeal. In the appeal submitted on November 7, 2013, plaintiff represented that "her knee condition prevents her performing any position with substantial standing, and her back condition prevents her from performing any occupation requiring substantial sitting." Plaintiff argued that Aetna's decision to deny her LTD claim was arbitrary and capricious because (1) Aetna had relied on a message from Dr. Gibson's assistant; (2) the medical records from December 2012 through September 2013 provide objective medical evidence that she is disabled; (3) Aetna had disregarded her co-morbid conditions of lumbar and cervical spine issue; and (4) Aetna "failed to distinguish" the Social Security Administration's determination that plaintiff is disabled. Aetna received additional medical records, including office notes from plaintiff's physician, Durgadas Sakalkale, who had examined her neck, shoulders and spine and diagnosed her with cervical degenerative disk disease, cervical spondylosis, and lumbar spondylosis; and Dr. Gibson's notes dated March 15, 2013, and June 21, 2013.

Aetna requested that independent contractor James Wallquist, M.D., who is Board Certified in Orthopedic Surgery, conduct an independent clinical review of plaintiff's claim. Dr. Wallquist reviewed the medical records provided by Aetna and attempted to conduct a telephonic peer-to-peer review with Dr. Gibson. He made three phone calls to Dr. Gibson's office, each time leaving a message for Dr. Gibson to return his phone call. During his third phone call, Dr. Wallquist spoke to a woman named Linda, who represented that she would get in touch with Dr. Gibson about the matter. Later that day, Dr. Wallquist received a phone call from another woman named Donna;

10

she reported that Dr. Gibson recommended no change to plaintiff's work status.  Donna also indicated that Dr. Gibson would evaluate plaintiff and address her "sedentary work" when he saw her at an appointment scheduled approximately three weeks later on December 20, 2013.

In a report dated December 3, 2013, Dr. Wallquist concluded that "there was a lack of significant quantifiable documentation by physical examination and/or diagnostics to correlate with claimant's subjective complaints to support a functional impairment that would preclude this claimant from engaging in any occupation from 2/27/13 through 11/21/13."  He found that plaintiff could perform in "any occupation" with some "allowance for change of position as needed and avoiding squatting, kneeling, climbing stairs or ladders, pivoting, and repetitive bending."  He also noted his approval of the sedentary occupations proposed by the Vocational Case Manager.

In a letter dated December 5, 2013, Aetna informed Dr. Gibson that it was reviewing plaintiff's claim for disability benefits and that the independent reviewer had attempted to reach him by telephone to discuss plaintiff's restrictions and limitations.  The letter attached Dr. Wallquist's report regarding plaintiff's functionality and requested that Dr. Gibson respond within five days if he disagreed with the conclusions.  Dr. Gibson did not respond to Aetna's letter.

In a letter dated December 12, 2013, Aetna informed plaintiff that Aetna would uphold the decision to terminate her LTD benefits, effective February 27, 2013.  The letter stated that Aetna had determined "that there was a lack of medical evidence (i.e., progress notes documenting abnormal physical exam findings, neurological deficits, etc.) supporting a functional impairment that would have prevented her from performing

11

work at any reasonable occupation."

By letter dated February 18, 2014, plaintiff's counsel requested that "Aetna reopen the last appeal, for which a decision denying benefits was issued on December 12, 2013." The letter requested the contact information to facilitate a teleconference with Dr. Gibson and the "file-reviewing physician's office." By letter, Aetna informed plaintiff's counsel that the appeal procedures had been exhausted and that the decision was not subject to further review.

Plaintiff filed this action pursuant to Section 502(a) of ERISA.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the

nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249. This standard applies equally to cross motions for summary judgment.

In her motion for summary judgment, plaintiff argues that Aetna erred in determining that plaintiff was not disabled from any occupation. Plaintiff requests the Court to order reinstatement of her LTD benefits. Defendants' motion for summary judgment asserts that Aetna's decision was supported by substantial evidence.

The decision of an ERISA plan administrator or fiduciary to deny a claim for benefits is subject to de novo review unless the plan affords the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the court applies the narrower arbitrary and capricious standard. Metro. Life Ins. Co. v. Glenn, 544 U.S. 105, 111 (2008); Firestone Tire & Rubber Co. v. Bruce, 489 U.S. 101, 115 (1989). Under the arbitrary and capricious standard, the denial of benefits will be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). Subjective complaints "if found credible ... could [be] legally sufficient evidence of disability." Krizek v. Cigna Group Ins., 345 F.3d 91, 102 (2d Cir. 2003).

The arbitrary and capricious standard applies where a plan provides for the fiduciary's discretionary authority to determine the participant's eligibility for benefits. Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 658 (2d Cir. 2013). Here, the plain language of the Plan affords Aetna, the fiduciary, "complete authority to review all denied claims for benefits."

Plaintiff argues that the Court should not apply the arbitrary and capricious standard of review because the Group Policy containing the express grant of discretion was not provided to plaintiff during the administrative process.  However, in Thurber, the Second Circuit stated that the plan administrator need not "actually notify a participant of its reservation of discretion" because the standard of review affects the Court's consideration of a wrongful denial of benefits rather than "what an applicant must do to become eligible for benefits."  712 F.3d at 654.   Accordingly, the Court must apply the arbitrary and capricious standard to determine whether "substantial evidence" in the record supports the decision to deny plaintiff LTD benefits.  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance."  Durakovic v. Bldg. Ser. 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010).  Plaintiff bears the burden to prove that she is entitled to benefits.  Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004).

Here, the determination that plaintiff could perform a sedentary occupation with some limitations is not supported by substantial evidence.

Aetna first denied plaintiff LTD benefits based on Nurse Tierney's conclusion that plaintiff was not so impaired that she could not perform any nursing-related functions in a sedentary job that also allowed her to change her position.  However, according to the physician notes, plaintiff would have difficulty standing or sitting for a duration of time and was deemed "still disabled from work."  No record evidence clarifies either the amount of time that plaintiff could sit or stand or whether plaintiff's ability to move from sitting to standing–Aetna's proposed accommodation–would actually enable her to work

in a full-time capacity. Nurse Tierney recognized that her independent analysis of the medical records contradicted the physician's assessment of plaintiff when she stated: "The available medical does not support physician's indication that claimant is unable to perform sedentary...." Thus, she sought "a peer review with Dr. Gibson" but failed to verify the third-party report conveying Dr. Gibson's purported agreement that plaintiff was capable of performing full-time sedentary work. Nurse Tierney never spoke to Dr. Gibson or received written correspondence regarding this asserted assessment.

After plaintiff appealed the denial of benefits, Dr. Wallquist also sought peer-to-peer review with Dr. Gibson in order to render a professional opinion regarding plaintiff's disability status. However, he never obtained that peer-to-peer review but relied instead upon the third-party report that Dr. Gibson recommended "no change" in plaintiff's work status, an ambiguous statement in light of Dr. Gibson's asserted intent to assess plaintiff and "address sedentary work" approximately three weeks later in December. Dr. Gibson's recommendation of "no change" may refer either to his prior notation that plaintiff was disabled from work and that he would therefore evaluate plaintiff for sedentary, or to his purported agreement that plaintiff could work a full-time sedentary position, as conveyed to Nurse Tierney by his assistant.

Rather than wait for a clarification by Dr. Gibson's evaluation of plaintiff for sedentary work, Dr. Walquist issued his report dated December 3, 2013, concluding that plaintiff "could perform in any occupation for the time frame under consideration with some allowance for change of position as needed and avoiding squatting, kneeling, climbing stairs or ladders, pivoting and repetitive bending."

Aetna did attempt to verify Dr. Wallquist's conclusion by sending his report to Dr.

Gibson by fax. However, Aetna requested that he respond to the report ten days prior to the date that Dr. Gibson's office had indicated plaintiff would be evaluated for sedentary work capacity. Thereafter, Aetna issued its final decision approximately a week prior to Dr. Gibson's evaluation, which would have provided competent documentation of plaintiff's sedentary work capacity.

Thus, in light of Dr. Gibson's notes identifying plaintiff as disabled, the lack of peer-to-peer review, and the reliance on an ambiguous third-party report of Dr. Gibson's opinion, the Court finds that Aetna's conclusion that plaintiff had the ability to work on a full-time basis with accommodation is not based on evidence a reasonable mind might accept as adequate. The Court does not suggest that Aetna should have made a different decision but will remand the matter to enable Aetna to complete its determination with a competent evaluation of plaintiff's capacity by her treating physicians.

Thus, the defendant's motion for summary judgment will be denied. Plaintiff's motion for summary judgment will be granted to the extent that the Court will remand this matter to Aetna to reopen its consideration of plaintiff's request for LTD benefits.

<u>Motion to Dismiss</u>

Plaintiff alleges that defendant Aetna, acting on behalf of, and as, the plan administrator, violated ERISA Section 1024(b)(4), when it failed to produce the Group Policy insurance contract. Defendants move to dismiss this claim because Aetna cannot be liable for a violation of Section 1024(b)(4).

Plaintiff had previously requested from Aetna a copy of the "[1] plan document and [2] summary plan description" for the long-term disability plan. Aetna sent plaintiff

a copy of the benefit plan booklet-certificate and the summary plan description but not the Group Policy contract.  Plaintiff asserts that she was prejudiced because she had to conduct her administrative appeal without having access to the document that provided for the reservation of discretion to Aetna.

Section 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  Pursuant to Section 1132(c)(1), an administrator that fails to comply with a request for information "which such administrator is required ... to furnish" may in the court's discretion be liable for penalties.  "In assessing a claim for statutory penalties under ERISA, a district court should consider various factors, including bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary."  Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 848 (2d Cir. 2013).

ERISA defines an "administrator" as the "person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. §1002(16)(A).  Here, the parties do not dispute that Aetna is not the designated plan administrator.  Rather, plaintiff argues that Aetna acted as the de facto administrator.  However, the Second Circuit has rejected the argument that an insurance company

under contract to provide assistance in the management of a plan can be considered an unnamed or de facto administrator. Lee v. Burkhart, 991 F.2d 1004, 1010 (2d Cir. 1993).

Even if Aetna could be held liable under Section 1132, plaintiff cannot sustain her claim of prejudice in support of an award of penalties in light of the Second Circuit's view that notice of the standard of review does not affect "what an applicant must do to become eligible for benefits." Thurber, 712 F.3d at 654. Accordingly, defendants' motion to dismiss the claim for failure to provide the Group Policy will be granted.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment [doc. 35] is DENIED; plaintiff's motion for summary judgment [doc. 33] is GRANTED to the extent that the Court remands the matter to Aetna. Upon remand, Aetna should reopen the matter to consider evidence from plaintiff's treating physicians regarding her functional capacity. Defendants' motion to dismiss [doc. 56] is GRANTED.

/s/Warren W. Eginton_____
Warren W. Eginton, Senior U.S. District Judge

Dated at Bridgeport, Connecticut this 12th day of May, 2016.